UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
GUGLIELMO PERNIS

                                                Civil Action No. 07-CIV 5787 (RMB)

                    Plaintiff,

      -against-                              **AMENDED COMPLAINT**


RICHTER + RATNER CONTRACTING CORP.       **JURY DEMAND MADE**

                    Defendant.
-------------------------------------------------------------- X

      Plaintiff, Guglielmo Pernis by his attorney Zeynel Karcioglu, alleges on knowledge as to his own acts and otherwise on information and belief as follows:

### Jurisdiction

    1.      The court has jurisdiction over this matter under 28 U.S.C. § 1332, as the parties to this action are diverse and the amount in controversy is in excess of $75,000, exclusive of costs and interest.

### The Parties

    2.      Plaintiff, Guglielmo Pernis ("Pernis") is an individual, and a resident and citizen of the State of California.

    3.      Upon information and belief, Defendant Richter + Ratner Contracting Corp. ("Richter + Ratner") is a corporation formed under the laws of New York, and has its principal place of business in New York City, New York.

### Venue

    4.      Venue is properly laid in this court under 28 U.S.C. § 1391, as the defendant resides in New York County and this judicial district.

**General Allegations**

5. Plaintiff is in the business of the sales of construction services and marketing.

6. Defendant provides general contracting and construction management services.

7. Among the services Defendant provides is the provision of construction services in connection with retail stores for clients that sell luxury brand clothing and apparel.

8. In or about the year 2000, Plaintiff and Defendant entered into a contract whereby Plaintiff, acting as an independent contractor, would provide Defendant with sales services in return for one percent (1%) of Defendant's total gross receipts from those clients that Plaintiff was responsible for introducing to Defendant, and for whom Defendant provided construction services (the "Agreement").

9. At the time the parties began doing business with each other, Plaintiff was a commercial real estate broker concentrating on high-end luxury European retail stores seeking to do business in the United States. As a result, he had many European contacts and commercial leads; around that same time, Defendant sought to do business with customers in Mr. Pernis' general target market : European luxury retailers seeking to build commercial stores in the United States.

10. Under the parties' Agreement, Plaintiff was to use his professional contacts and leads to introduce clients to Defendant. The Agreement provided that Defendant was to pay Plaintiff one (1%) percent of all Defendant's gross receipts (including revenues from change orders and future constructions) from any business it conducted with a client Mr. Pernis introduced to it  - for as long as Defendant did business with that client.

11. Performance on the part of Mr. Pernis was deemed complete as soon as Mr. Pernis introduced the client to Defendant and an initial business relationship with that client was

established; under the Agreement there was no requirement for Mr. Pernis to maintain or update the introduction or the relationship, no matter how many construction projects Defendant built for those clients after the introduction was made.

12. Amendments to contracts, and change orders, and subsequent construction contracts between Defendant and the clients introduced by Mr. Pernis were paid by Defendant in the same manner, and Mr. Pernis received one percent (1%) of that gross revenue as well.

13. The parties agreed that once Mr. Pernis made the introduction of the client to Defendant, the commission payments would be due Plaintiff for as long as that client did business with Defendant, regardless whether Mr. Pernis worked for Defendant.

14. Over the next several years, Plaintiff successfully performed under the Agreement and was solely responsible for introducing several companies to Defendant, and Defendant, having received the benefits of Plaintiff's performance in the form of several new European-based clients, paid Plaintiff in accordance with the Agreement, i.e. for each client Plaintiff introduced to Defendant, Plaintiff was paid one (1%) percent of the gross receipts Defendant received from that client.

15. Clients that Plaintiff introduced to Defendant under the Agreement include: Ermenegildo Zegna, Roberto Cavalli, Bally, Bulgari, L.V.M.H., Richemont, Camper, IT Holding, Lanvin, Pringle of Scotland, Mango of Spain, ST Dupont, Marzotto Corp./ Valentino of Italy, Charme Group / Ballantyne, Cole Haan, Ted Baker, Etro, Miss Sixty, Trussardi, Tod's, Bally, Marc Jacobs, their subsidiaries, related companies and others.

16. During the parties' relationship, there were several instances in which Plaintiff successfully introduced clients to Defendant, but Defendant decided not to do business with those clients.

17. In or about 2004, the parties entered into an employment agreement under which Plaintiff would be paid a salary for providing marketing services on behalf of Plaintiff. These services were considered separate from the sales services that Mr. Pernis provided under the Agreement.

18. The parties agreed that Plaintiff's capacity as an employee would not affect the parties' Agreement, which would remain in force, and specifically agreed that Plaintiff would continue, as an independent contractor, to receive one percent (1%) of the Defendant's gross receipts from those clients whom Plaintiff was solely responsible for introducing to Defendant. The employment relationship was to have no effect on either the sales services that Mr. Pernis already provided for Defendant, or the sales services he was to provide going forward.

19. A copy of a document dated May 21, 2004 setting forth the clients that Plaintiff was solely responsible for introducing to Defendant is attached hereto as Exhibit A. This document, (the "May 21, 2004 Document") confirms the parties' understanding that *in addition* to the parties' employment agreement, the parties' commission Agreement would be continue to be compensated to Mr. Pernis "by a straight 1% commission percentage of all Gross (total) amounts paid to Defendant" by the clients introduced by Mr. Pernis.

20. The May 21, 2004 Document goes on to list several companies for which Mr. Pernis had performed under the Agreement, and for which he was due 1% commission on future gross receipts to Defendant. *Id.*

21. The parties' understanding as to the separate nature of the Agreement as from Mr. Pernis' employment was confirmed in several subsequent writings. A copy of on such writing is a letter sent by Defendant to Plaintiff in May 2005 attached hereto as Exhibit B.

22. After May 2004, Plaintiff continued to provide services to Defendant. In return for the marketing services he provided, Mr. Pernis was paid a salary and benefits as an

employee. For these amounts, Defendant treated Plaintiff as an employee, and issued him a W-2, and withheld taxes and social security from that salary.

23. Even after May 2004, however, Defendant continued to pay Plaintiff for the services performed under the Agreement as an independent contractor. Defendant did not withhold taxes from Plaintiff's payments under the Agreement, instead issuing him a 1099 form. Plaintiff was responsible for his own self employment taxes.

24. In April 2006, Defendant terminated Plaintiff's employment contract without cause.

25. At that time, it was acknowledged that Defendant would continue to pay Plaintiff under the Agreement.

26. Defendant understood its obligation under the Agreement and continued to pay Mr. Pernis the one percent (1%) due through December 2006 –eight months after Plaintiff's employment had been terminated.

27. On or about April 9, 2007, Defendant sent Plaintiff a letter giving Plaintiff "notice" that it would no longer pay Plaintiff the one percent (1%) commissions Plaintiff was due under the Agreement because Mr. Pernis began working for a company Defendant considered competitor. A copy of this letter is attached as Exhibit C.

28. Plaintiff brought this action seeking enforcement of the parties' Agreement, and damages for breach of contract, unjust enrichment, Quantum meruit, and failure to pay wages under the New York Labor Law.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

29. Plaintiff repeats and realleges paragraphs 1 through 28 above with the same force and effect as if set forth in full herein.

30. At all times relevant to this action, Plaintiff has satisfied all of his obligations under the Agreement.

31. As a result of Plaintiff's sales services provided under the Agreement, several companies were introduced to Defendant by Plaintiff, and many of these companies became Defendant's clients. Defendant benefitted, and continues to benefit from those clients.

32. Upon information and belief, Defendant continues to perform construction services for several of the companies that Plaintiff introduced to Defendant.

33. Upon information and belief, Defendant continues to receive revenues from several of the companies that Plaintiff introduced to Defendant.

34. In certain cases, several of the construction projects that were begun before April 2004 are still being built, and Defendant is still receiving revenue from those construction projects.

35. Upon information and belief, Defendant will do business and receive a benefit from the clients introduced by Plaintiff in the future.

36. Under the terms of the Agreement, Defendant is obligated to pay Plaintiff one (1%) percent of the gross (total) billings from any business Defendant conducts with clients who were introduced to Defendant by Mr. Pernis.

37. Under the Agreement, Mr. Pernis was, and is entitled to one percent (1%) of all revenues that Defendant has from those clients introduced by Mr. Pernis.

38. Defendant continues to reap the benefits of the Agreement. Clients introduced to it by Mr. Pernis continue to produce millions of dollars in revenue for Defendant.

39. Defendant has breached the terms of the Agreement by failing to pay to Plaintiff any monies due under the Agreement.

40. As a direct result of Defendant's willful breach of the Agreement and refusal to pay Mr. Pernis under the Agreement, Plaintiff has been damaged to date in an amount equal to the commissions he has not been paid, and which are due under the Agreement, which are at this time no less than eighty-five thousand ($85,000.00) dollars, or some greater amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

41. Plaintiff repeats and realleges paragraphs 1 through 40 above with the same force and effect as if set forth in full herein.

42. At all times relevant to this action, Plaintiff has performed services for the benefit of Defendant, at his own expense of time, effort, and labor.

43. Defendant has been, and continues to be, enriched by Plaintiff's performance of services, at Plaintiff's expense.

44. The principles of equity and good conscience dictate that Defendant not be permitted to withhold and retain the benefits conferred upon it by Plaintiff, accordingly, Plaintiff seeks recovery from the Defendant in an amount equal to the commissions he has not been paid, currently eighty-five thousand ($85,000.00) dollars, or some greater amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (Specific Performance)

45. Plaintiff repeats and realleges paragraphs 1 through 44 above with the same force and effect as if set forth in full herein.

46. At all times relevant to this action, Plaintiff fully performed his obligations under the parties' Agreement.

47. The parties' Agreement provided that once Mr. Pernis introduced a client to Defendant, Defendant would pay Plaintiff one percent (1%) of the revenue from any business Defendant was to conduct with that client going forward.

48. Upon information and belief, Defendant continues to perform services for, and receive revenue from the clients introduced to it by Plaintiff.

49. Defendant has denied that Plaintiff is due further payments under the Agreement, despite the fact that Plaintiff has performed all of his obligations under the Agreement.

50. There is an actual controversy existing between Plaintiff Pernis and the Defendant, who continues to be enriched by the services performed by Plaintiff, and who is refusing to compensate Plaintiff.

51. Pernis has been damaged by Defendant's failure to honor the terms of the Agreement, and has no adequate remedy at law.

52. Defendant's failure to honor the terms of the agreement is willful and intentional.

53. In light of the foregoing, Plaintiff seeks specific performance of the Agreement on the part of Defendant.

**FOURTH CLAIM FOR RELIEF**
**(Failure to Pay Wages Under the New York Labor Law)**

54. Plaintiff repeats and realleges paragraphs 1 through 53 above with the same force and effect as if set forth in full herein.

55. Pleading in the alternative, in the event that Plaintiff is determined to be an employee, and not an independent contractor, Plaintiff was a commission salesman of Defendant

as set forth under the New York Labor Law § 190, and as such is entitled to timely payment of wages under § 191(1)(c) of the Labor Law.

56. Defendant has failed to make timely payment of Plaintiff's commissions, which are wages under the New York Labor Law.

57. Defendant willfully violated the Labor Law in failing to timely pay Plaintiff's wages.

58. As a direct result of Defendant's willful violation of the Labor Law, Plaintiff is entitled to costs, reasonable attorneys fees, and liquidated damages equal to twenty-five percent (25%) of the wages due Mr. Pernis, which are at this time no less than eighty-five thousand ($85,000.00) dollars, or some greater amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
**(Quantum Meruit)**

59. Plaintiff repeats and realleges paragraphs 1 through 58 above with the same force and effect as if set forth in full herein.

60. Plaintiff performed all sales services for Defendant in good faith, and expected to be compensated therefore, through payment by Defendant of one percent (1%) of the total revenue it received from the clients introduced to it by Plaintiff, which is a fair rate of compensation.

61. Defendant accepted Plaintiff's performance of these services, and profited from that performance.

62. As a result, Plaintiff is entitled to recovery from the Defendant in an amount equal to one percent (1%) of the Defendant's gross receipts from the clients introduced by Plaintiff, currently no less than eighty-five thousand ($85,000.00) dollars, or some greater amount to be determined at trial.

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A) On and for the First Claim for Relief, that Plaintiff Guglielmo Pernis be awarded the greater of eighty-five thousand ($85,000.00) dollars, or the unpaid portion of one percent (1%) of Defendant's gross receipts from those clients that Plaintiff introduced to Defendant, as may be determined at trial and interest thereon;

B) On and for the Second Claim for Relief, that Plaintiff Guglielmo Pernis be awarded the sum of eighty-five thousand ($85,000.00) dollars, or, the unpaid portion of one (1%) percent of Defendant's gross receipts from those clients that Plaintiff introduced to Defendant, as may be determined at trial, and interest thereon;

C) On and for the Third Claim for Relief, that the Agreement be declared by this Court to be in full force and effect, and

　　i. that Defendant, along with its officers, employees, agents, servants, attorneys and those persons in active concert, privity or participation with them, or any of them, or any of their successors or assigns be ordered to pay Plaintiff one (1%) percent of the gross revenues received by Defendant from the clients introduced to it by Plaintiff; such payment to be made within fifteen (15) days that Defendant receives such revenues, and

　　ii. that Defendant along with its officers, employees, agents, servants, attorneys and those persons in active concert, privity or participation with them, or any of them, or any of their successors or assigns be

required to account to Plaintiff for Defendant's revenues each month, or upon five (5) days written notice to Defendant by Plaintiff.

D) On and for the Fourth Claim for Relief, that Plaintiff Guglielmo Pernis be awarded the unpaid portion of one percent (1%) of the Defendant's gross receipts from Defendant's clients that Plaintiff introduced under the terms of the Agreement (currently believed to be eighty-five thousand ($85,000.00) dollars), an additional 25% of such sum as liquidated damages, and reasonable attorneys fees, and interest thereon;

E) That Plaintiff have and recover the taxable costs and expenses;

F) That Plaintiff have such other and further relief as the Court may seem just and equitable.

Dated: September 19, 2007
      New York, New York

By: _____/s/_____
Zeynel Karcioglu (ZK 7931)
Attorney for Plaintiffs
36 East 20th Street 6th Floor
New York, New York 10003
(212) 505 – 6933