UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
GUGLIELMO PERNIS

                                        Plaintiffs,
        -against-

RICHTER + RATNER CONTRACTING CORP.

                                        Defendant.
------------------------------------------------------------- X

Civil Action No. 07 cv 5787 (RMB)

Plaintiff's Opposition to Defendant's Motion to Dismiss

Zeynel Karcioglu, Esq.
Attorney for Plaintiff
36 East 20th Street, 6th Floor
New York, NY 10003

1

# TABLE OF AUTHORITIES

## Statutes and Rules

FED. R. CIV. P. 8 .................................................................................................. 7

FED. R. CIV. P. 12(b)(6) ............................................................................ 7, 12, 14

N.Y. Gen. Obligations Law § 5-701 ................................................................... 14

## Cases

*Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40 (2d Cir. 1991) ............................ 6

*APS Food Sys. Inc., v. Ward Foods, Inc.*, 70 A.D.2d 483,
421 N.Y.S.2d 225 (1st Dept. 1979) ..................................................................... 14

*Arizona Premium Fin., Inc. v. Bielli*, 77 F.Supp.2d 341 (E.D.N.Y.1999) ............ 6

*Bendevena v. Fuchs Real Estate Inc.*, 89 Misc. 2d 466, 291 N.Y.S.2d 939 (1976) .......... 9

*Bourne v. Walt Disney Co.*, 68 F.3d 621, 627 (2d Cir. 1995) ............................. 12

*Cirillo v. Muss Development Co*, 278 A.D.2d 353, 717 N.Y.S.2d 638 (2d Dept 2000) .......... 9

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) .................................................. 6, 7

*CSI Investment Partners II, L.P. v. Cendant Corp.*, --- F.Supp.2d ----
2007 WL 2589449 (S.D.N.Y. Sept. 7, 2007) ....................................................... 7

*E.G.L. Gem Lab Ltd. v. Gem Quality Institute, Inc.*, 90 F.Supp.2d 277 (S.D.N.Y.,2000) ........ 12

*Fuchsberg & Fuchsberg, v. Commissioner of Taxation and Finance*,
13 A.D.3d 831 (3rd Dept 2004) .......................................................................... 10

*Morgan Services, Inc. v. Abrams*, 21 A.D.3d 1284 (4th Dept. 2005) ................. 10

*Gerard Klauer Mattison & Co. v. Shared Technologies, Inc.*, ............................ 16
1997 WL 394585 (S.D.N.Y. July 14, 1997).

*In re Hudson Feather & Down Prods., Inc.*, 22 B.R. 247 (E.D.N.Y. 1982) ......... 9

*Handel v. STA Travel (NY), Ltd.*, 216 A.D.2d 177 (1st Dept. 1995) ..................... 8

*H&H Poultry, Corp. v. MBPXL Corp.*, 95 Misc. 2d 895,
408 N.Y.S. 2d 602 (Sup. Ct. N.Y. Co. 1978) ...................................................... 13

*Knudsen v. Quebecor Printing (USA) Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992) ........................ 16

*Lamprecht v. Comte*, 1994 WL 260867 at *4 (S.D.N.Y. June 7, 1994) .................................... 15

*Maloney v. Jarco Metal Prods Corp.*, 144 N.Y.S.2d 128, 132 (N.Y. Sup. Ct. 1955) .................. 9

*Marcella v. ARP Films, Inc.*, 778 F.2d 112, 116 (2d Cir. 1985) ........................................... 14, 15

*McGimpsey v. J. Robert Folchetti & Assocs, LLC*, 19 A.D.3d 658, 798 N.Y.S.2d 498 (2nd Dept. 2005) ................................................................ 9

*Parisi v. Swift*, 121 Misc.2d 787, 468 N.Y.S.2d 841 (Civ. Ct. 1983) .................................... 8

*Rasmussen v. Yellow River, Inc.*, 298 A.D.2d 322, 749 N.Y.S.2d 239 (1st Dept 2002) ........ 9

*Schroeder v. Sitelines, Inc.*, 275 N.E.2d 590 (N.Y. 1971) .................................................. 8

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) ............................ 6

*Yudell v. Ann Israel & Assocs*, 248 A.D.2d 189, 191 (1st Dept. 1998) ............................. 9

*Zucker v. Katz*, 708 F. Supp. 525, 531 (S.D.N.Y. 1989) .................................................... 13

*Zupan v. Blumberg* 2 N.Y.2d 547 (Court of Appeals, of New York 1957) ....................... 13

**Preliminary Statement**

Pursuant to a commission agreement evidenced and acknowledged by numerous signed writings, correspondence, proofs of payments, as well as admissions in this case, plaintiff Guglielmo Pernis performed services for the defendant, Richter + Ratner Construction Corp. for almost six years. Mr. Pernis fully and successfully performed his obligations, and defendant benefitted from his performance. In early 2006, defendant changed management, and in April new management terminated Mr. Pernis (who had by that time begun performing functions as an employee in addition to his independent contractor sales services).

Defendant continued to perform construction services for projects entered into while Mr. Pernis was still employed a Richter + Ratner, so after it terminated Mr. Pernis, defendant continued to pay him, per its obligations under the commission agreement it had entered into with him as an independent contractor. In a letter dated April 9, 2007, however, defendant – for the *first* time, after almost one year of paying plaintiff post-employment commissions – indicated that it would no longer pay plaintiff the commissions under the parties' agreement, and disingenuously claimed that it was never obligated to pay plaintiff post-employment commissions, but simply "chose" to do so.

The truth is that Richter + Ratner's new management simply does not want to live up to the obligations entered into (and acknowledged in signed, notarized writings) by its previous management. Defendant continues to benefit from Mr. Pernis' performance under the commission contract, even continuing to perform construction services on projects entered into before Mr. Pernis was terminated.

In response to defendant's breach and inequitable acts, plaintiff brings this lawsuit, seeking relief for breach of contract, unjust enrichment, Quantum meruit, specific performance, and violation of the New York Labor Law.

2

Defendant, for its part, has moved to dismiss Mr. Pernis' sufficiently pleaded claims, and has mischaracterized the nature of the parties' relationship, the services the parties each perform, the agreements between the parties, and the laws of the State of New York. Essentially, defendant seeks to prevent discovery in this action, and even though it has admitted the existence of the commission agreement, and has seen sufficient documentary evidence that plaintiff uses to support his Amended Complaint, defendant persists in seeking a ruling which would improperly interpret the parties' contracts, weigh evidence regarding performance of those contracts, determine the plaintiff's employment status; finally, defendant would have this court ignore key acts and admissions on the part of defendant, which further support plaintiff's claims and render defendant's motion unavailing.

This is not, as defendant seeks to assert, a run-of-the-mill disgruntled salesman seeking post-termination commissions in the absence of any writing or documentary evidence; an analysis of the facts and evidence surrounding this industry and this action plainly indicate that defendant has much to hide. Depositions and documentary evidence in defendant's possession will clearly and decisively prove that the defendant knowingly entered into a contract under which plaintiff performed fully and admirably to defendant's benefit. Defendant's belated protestations and attorneys' briefs seeking to forestall discovery cannot and should not prevent this court from enforcing defendant's obligations. Plaintiff has adequately stated several claims for relief in its pleadings, and has supported those with the requisite documents that it has in its possession.

Neither the Federal Civil Procedure nor the substantive laws of the State of New York permit Defendant to dismiss the case at this early stage. Accordingly, defendant's motion at this stage – before any discovery has been had – is premature, and must be denied.

### Brief Statement of Material Facts

Plaintiff Guglielmo Pernis ("Mr. Pernis") commenced this action to recover monies owed for work he performed as an independent contractor for defendant Richter + Ratner Construction Corp., ("Richter + Ratner" or "R+R") between 2000-2006. This work was performed pursuant to a contract the parties entered into in 2000 (the "Year 2000 Agreement"). Am. Compl. ¶ 8. Under that agreement, Mr. Pernis was paid 1% of the gross revenues (including change orders) that R+R earned from clients who he was directly responsible for bringing to Richter + Ratner.[1] Am. Compl. ¶ Id. For several years, Plaintiff performed work as an independent contractor under the Agreement, and was paid accordingly: he paid his own self-employment taxes, and was issued a form 1099 for his taxes. Am. Compl. ¶ 23.

In 2004 Plaintiff also began working for R+R as an employee. Id. at ¶ 17. The parties treated these services as separate from the services Mr. Pernis performed under the Year 2000 Agreement. Id. A signed, notarized document dated May 21, 2004 confirms the parties' understanding that in *addition* to the parties' employment agreement, the Year 2000 Agreement would continue in effect. A copy of this writing is annexed to the Amended Complaint as Ex. A, and is excerpted below:

> "*Additionally*, a commission agreement entered into . . . in the Year 2000 . . . is to be compensated by a straight commission percentage of 1% to be calculated on the Gross (total) billings paid to Richter + Ratner, inclusive of change orders, by the following Companies." The Designated Clients are listed in that document.) (Emphasis added.)

After that time, Mr. Pernis was paid a salary and benefits in return for his performance of marketing functions for R+R, and was paid commissions as an independent contractor under the Year 2000

---

[1] For purposes of this memorandum in opposition to Defendant's Motion to Dismiss, the clients for which Mr. Pernis is entitled to the 1% commissions will be referred to as the "Designated Clients." A list of Designated Clients is set forth in Exhibit A to both the Amended Complaint and Defendant's Amended Answer.

4

Agreement: the parties agreed that plaintiff's capacity as an employee would not Affect the parties' Year 2000 Agreement. Id. at ¶ 18.

Mr. Pernis was paid accordingly: for the purposes of the marketing functions he performed, R+R treated him as an employee – it issued Mr. Pernis a W-2 and withheld taxes from his salary payments. With regard to the work he performed under the Year 2000 Commission Agreement, however, Mr. Pernis was paid as an independent contractor and R+R did not withhold any taxes from commission payments. Id. at ¶¶ 22, 23. The parties thus treated the agreements and Mr. Pernis' performances as separate and distinct.

Due to the valuable nature of the Year 2000 Agreement, the parties confirmed its terms on several occasions. Id. at ¶ 21. In 2005, Michael Ratner, then-president of defendant, acknowledged the terms of the parties' agreement in a signed, notarized letter to Mr. Pernis dated May 9, 2005, stating that : "Richter + Ratner acknowledges that [Mr. Pernis is] solely responsible for introducing Bulgari Jewelers to [R+R} and that *any* business [R+R] conducts with Bulgari will be compensated to [Mr. Pernis] with 1% of the gross contract value*(s)* as set forth in [the] *general commission agreement* with Richter & Ratner." Ex. B (Emphasis added.)

Defendant was taken over by new management in 2006, and terminated Mr. Pernis' employment without cause in April of that year. Am. Compl. ¶ 24. At the time when Defendant terminated Mr. Pernis' employment, Richter + Ratner was still working on several projects procured by Mr. Pernis' performance under the parties' agreement. Id. at ¶ 31. These projects were procured before Mr. Pernis' was terminated as an employee, and in fact, Defendant is still working on those same projects. Id. at ¶¶ 32-34.

After his termination, Mr. Pernis sought to confirm that he would continue to be paid the commissions under the Year 2000 Agreement, and was told that he would be. Id. at ¶ 25. He was.

In fact, after terminating Mr. Pernis' employment, Defendant continued to honor the Year 2000 Agreement and continued to pay Mr. Pernis the 1% commission for the projects Mr. Pernis had brought to R+R, inclusive of change orders, until December 2006.

At the end of 2006 however, Defendant appears to have had a change of heart, and no longer wanted to pay Mr. Pernis 1% of gross revenues under the parties' agreement. Marc Heiman, the new president of R+R wrote Mr. Pernis a letter indicating that R+R had - out of beneficence - continued to pay him 1% commission from the projects he procured (several procured before his termination), and which were still creating revenue, but that it no longer would do so. *See* Ex. C to Am. Compl. ("In acknowledgement of your past service to R+R, we chose to continue to pay you commissions through December 2006, although we were not legally obligated to do so. . . . . This letter serves as notice to you that all commission payments to you have ceased.")

Plaintiff brought this action, and defendant has responded with this premature motion in an effort to prevent discovery in this case which would uncover more documentary evidence in support of Mr. Pernis' claims, such as internal memoranda, correspondence, project income projections, ledgers, as well as deposition testimony from key persons, such as Mr. Ratner, who authored the May 9, 2005 letter, and others who have knowledge of the admitted and acknowledged commission agreement. Defendant paints Mr. Pernis as a garden variety disgruntled salesman, seeking sales commissions that are not his due, however the documents simply produced thus far indicate that there are many issues to be resolved that prevent disposition of this action under this motion.

The facts – both as alleged in the Plaintiff's pleadings, and as set forth in documentary evidence – confirm that this is not the case.

## ARGUMENT

### Motion to Dismiss Standard

Despite defendant's assertions to the contrary, the Amended Complaint sets forth factual allegations that, taken to be true with all inferences drawn in favor of plaintiff, establish numerous valid causes of action against Richter + Ratner. It is well established that in order to succeed on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a defendant must demonstrate that "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, in considering defendant's motion, the court must "accept as true all of the factual allegations set out in Plaintiff's Complaint, and must draw all reasonable inferences in Mr. Pernis' favor. *Id.*

At this early stage, the court's analysis limited to a decision whether the plaintiff is "entitled to offer evidence to support the claim," not a determination as to whether plaintiff is likely to prevail. *Arizona Premium Fin., Inc. v. Bielli*, 77 F.Supp.2d 341, 345 (E.D.N.Y.1999) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). Furthermore, Plaintiff's causes of action are governed by the liberal pleading guidelines of Fed. R. Civ. P. 8(a), which require only that the plaintiff make "a short and plain statement of the claim 'that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Conley*, 355 U.S. at 47).

Taking as true all the facts set forth in the Amended Complaint, the Exhibits thereto, and the admissions and exhibits to Defendant's Amended Answer, it would be manifestly unfair to permit Mr. Pernis at this early stage from offering evidence – most of which lies in the sole possession of defendant – to support his numerous meritorious claims.

7

## Breach of Contract

Plaintiff has adequately alleged defendant's breach of the parties' contract; it alleges "(1) the existence of a contract" along with supporting writings (Am. Compl. 8, 19, 21); "(2) that the defendant failed to perform his or her obligations thereunder" (Id. at ¶¶ 27, 39); "(3) that the plaintiff has performed his or her obligations under the contract" (Id. at ¶¶ 30); and "(4) resulting damages to the plaintiff" (Id. at ¶¶ 39, 40). *See CSI Investment Partners II, L.P. v. Cendant Corp.*, --- F.Supp.2d ----, 2007 WL 2589449 (S.D.N.Y. Sept. 7, 2007)(setting forth elements of breach of contract claim).

Defendant attacks the sufficiency of the Complaint and the Year 2000 Agreement itself by asserting that (1) a "sales representative *employed at will* is not entitled to commissions after the relationship has been terminated absent an express contractual provision to the contrary;" (Def.'s Mot. To Dismiss at 5. (2) the May 21, 2004 document attached to the Complaint (and Def.'s Am. Answer) as Ex. B "supersedes" the Year 2000 Agreement" despite (a) its reference to that Agreement as a separate understanding, and (b) a *subsequent* writing from Defendant acknowledges Mr. Pernis' performance and confirms that he is owed commissions from Designated Clients; and (3) the Agreement is void as a matter of law because it purportedly violates the Statute of Frauds. These arguments are addressed in turn.

### (1) Mr. Pernis is Entitled to Commissions For Projects for Which He Performed The Major Portion of the Consideration.

Defendant repeatedly asserts that Mr. Pernis is not entitled to *any* commissions after his employment status was terminated – even though he was clearly being paid and treated as an independent contractor, and plaintiff has alleged that he was an independent contractor.

8

In doing so defendant conflates two sets of facts pleaded in the Amended Complaint for which plaintiff is entitled to damages for defendant's breach:

The first set of facts is a situation in which Mr. Pernis has performed all of his obligations prior to termination of his employment by Richter + Ratner in April 2006, and defendant still today is working on the very same projects that were begun *prior* to the termination of Mr. Pernis' employment. Am. Compl. ¶¶ 31-40. It is undisputed that Mr. Pernis was entitled to commissions on "Gross total billings paid to Richter + Ratner, *inclusive of change orders*" for Designated Clients. Ex. A to Am. Compl. (Emphasis added). Defendant has admitted as much, but disputes the *nature* of the agreement (claiming it is an employment agreement). Am. Answer ¶ 8. Plaintiff further indicated that under the parties' Agreement, he did not have to "maintain or update the introduction or the relationship." Am. Compl. ¶ 11.

Taking all plaintiff's allegations as true, Mr. Pernis has fully performed under the agreement, which foresaw and vested in him commissions from all revenues including future change orders for those projects he procured for R+R. Where, a party has, prior to termination "*fully* performed [his] required services . . . [he] is entitled to [his] share of the commission" even where the sale or change order is consummated after his termination. *Parisi v. Swift*, 121 Misc.2d 787, 468 N.Y.S.2d 841 (Civ. Ct. 1983)*(emphasis added); see also Handel v. STA Travel (NY), Ltd.,* 216 A.D.2d 177 (1st Dept. 1995) (holding that a party may not deprive an independent contractor of commission payments under an agreement after the contractor has tendered performance): *Schroeder v. Sitelines, Inc.,* 275 N.E.2d 590 (N.Y. 1971)(where it was manifest that sales representatives had performed, commissions due). Furthermore, even *arguendo* Mr. Pernis is an employee at will rather than an independent contractor, the courts do not distinguish between independent contractors and employees in making these determinations where the employee has

performed its obligations fully under a contract for commissions, he is entitled to those commissions. *Rasmussen v. Yellow River, Inc.*, 298 A.D.2d 322, 749 N.Y.S.2d 239 (1st Dept 2002)(affirming lower court decision granting plaintiff's unpaid commissions that were earned before termination, where the purchase price from which the commission was due was not paid until after termination.) *Maloney v. Jarco Metal Prods Corp.*, 144 N.Y.S.2d 128, 132 (N.Y. Sup. Ct. 1955) (holding commissions payable where "major consideration in the earning of commissions" performed before termination); *Yudell v. Ann Israel & Assocs*, 248 A.D.2d 189, 191 (1st Dept. 1998)(affirming denial of defendant's motion for summary judgment, and granting plaintiff's cross-motion for summary judgment where plaintiff "originated" placements under the parties' agreement prior to termination.); *Bendevena v. Fuchs Real Estate Inc.*, 89 Misc. 2d 466, 291 N.Y.S.2d 939 (1976).

The courts deciding the above cases all examined the record, and weighed evidence to determine the extent of plaintiff's performance in these cases. *Id., see also In re Hudson Feather & Down Prods., Inc.*, 22 B.R. 247 (E.D.N.Y. 1982)(right of a sales agent to receive post-employment commissions depends on nature of the agreement). Even the cases cited by *defendant* indicate that performance is a question of fact to be determined where there is a question of the timing and sufficiency of performance as regards commissions. *McGimpsey v. J. Robert Folchetti & Assocs, LLC*, 19 A.D.3d 658, 660, 798 N.Y.S.2d 498 (2nd Dept. 2005)(question of fact as to whether plaintiff was paid for contracts *finalized* before termination); *Cirillo v. Muss Development Co.*, 278 A.D.2d 353, 354, 717 N.Y.S.2d 638 (holding allegations that where "commission was earned [while plaintiff was employed] but partially payable at a later time, then the plaintiff would be entitled to the relief [he] seeks.")2

---

2 Finally, determination of whether a worker is an employee or independent contractor is a matter of fact, not law, and is inappropriate to consider prior to discovery; furthermore, it is clear that in New York, a party may be both an

### (2) Mr. Pernis is Entitled to Commissions For Future Projects for Designated Clients Post termination, as set forth in the May 9, 2005 Letter, and as Paid By Defendant until December 2006.

The second scenario under which Plaintiff may obtain relief is one in which Plaintiff is due commissions for revenues from construction contracts entered into by R+R and Designated Clients *after* Mr. Pernis's termination. Am. Compl. ¶¶ 31-40, Ex. B. to Am. Compl.

Michael Ratner's *signed* and *notarized* letter "confirming" and "acknowledging" Mr. Pernis' full performance and defendant's obligations to pay the 1% commissions due under the "general commission agreement" clearly expresses an intent on the part of R+R to be bound to pay Mr. Pernis for "any" business it conducts with Bulgari, and by inference, other Designated Clients.[3] Furthermore, the commission agreement referred to by Mr. Ratner (and admitted to exist by Defendant in its Am. Answer ¶ 8) paid Mr. Pernis for all change orders. These documents support Mr. Pernis' allegations in the complaint that "full" performance under the agreement was the introduction of the Designated Clients to R+R.

Mr. Ratner acknowledges several key terms of the parties' commission agreement:

(1) that Mr. Pernis' obligation under the commission agreement was to "introduce" clients to Richter + Ratner, and that he would be paid commissions for being solely responsible for introducing clients to R+R;

(2) that Mr. Pernis was due commissions on *"any"* contracts going forward (Mr. Ratner uses the phrase "gross contract value*(s)*" in the plural):

---

employee and independent contractor at the same time. *See, e.g. Fuchsberg & Fuchsberg, v. Commissioner of Taxation and Finance*, 13 A.D.3d 831 (3rd Dept 2004).

3 "Any evidence that shows that the parties to a written instrument intend that the same should be operative and binding upon them is sufficient in an action to enforce its provisions." *Morgan Services, Inc. v. Abrams*, 21 A.D.3d 1284 (4th Dept. 2005). This instrument itself is enforceable where defendant has performed construction work for Bulgari, which will be proved at trial.

11

(3) that the parties contemplated and agreed that commission payments were contemplated to endure after an end to the parties' relationship ("In case of the sale of [R+R] we will inform the prospective buyer(s) and/or investor(s) of the above mentioned obligation to [Mr. Pernis.]" Am. Compl. Ex. B (Emphasis added); and

(4) a confirmation and acknowledgement that Mr. Pernis had performed and is entitled to commissions.

In the face of this express communication in this case, plaintiff is entitled to produce evidence in support of his claims. *Arizona Premium Fin.*, 77 F.Supp.2d 341, 345 (setting forth 12(b)(6) standard). Particularly necessary in this case are the records and depositions of Mr. Ratner, and the R+R human resources department, which will show that the parties intended to that the commission agreements for work done for Designated Clients endure. Again, a finder of fact must determine the course of dealing between the parties, what was meant by performance under the Year 2000 Agreement, the construction industry standards, and evaluate documentary and sworn evidence in order to determine the intent of the parties' agreement, also taking into account defendant's partial performance in the form of post-employment payments to Mr. Pernis through December 2006.

### Merger

The 2004 document executed by both parties does not contain a merger clause, and, on its face refers specifically to the Year 2000 Commission Agreement as an additional agreement, not as an agreement to be subsumed by that document, only referenced.

> "*Additionally, a commission agreement* entered into . . . in the Year 2000 . . . *is to be compensated by a straight commission percentage* of 1% to be calculated *on the Gross (total) billings* paid to Richter + Ratner, inclusive of change orders, *by the following Companies.*" (Emphasis added.)

Defendant claims both that the Year 2000 Agreement is both merged into the 2004 Agreement, and also that there is no writing sufficient to document the Agreement. It cannot have it both ways. When a contract lacks an express integration clause the district court must "determine whether the parties intended their agreement to be an integrated contract by reading the writing in light of the surrounding circumstances." *See, e.g., Bourne v. Walt Disney Co.*, 68 F.3d 621, 627 (2d Cir. 1995). It would be impossible to determine the parties' intent and the surrounding circumstances before discovery is conducted.

In any event, it is unclear how or why a claim that the agreements have been integrated aids defendant. An "integrated" or "merged" contract, as the defendant refers to it, only prohibits introduction of parol evidence to prove inconsistent terms as regards the contract; it does not prohibit later evidence that assists in interpretation of those terms. *E.G.L. Gem Lab Ltd. v. Gem Quality Institute, Inc.*, 90 F.Supp.2d 277 (S.D.N.Y.,2000)(setting forth factors to analyze circumstances surrounding the writing, and holding that agreement was not fully integrated where it *referenced* a separate oral agreement and parties were not represented by counsel). Parol evidence is evidence prior to reduction of an agreement to writing, it does not bar subsequent writings or modifications.

### Statute of Frauds

Plaintiff's contract claims are not barred by the Statute of Frauds. R+R did not have to accept every client or construction contract Mr. Pernis directly introduced to it: in fact, the Amended Complaint alleges that on several occasions, defendant chose not to do business with clients that Mr. Pernis introduced. Am. Compl. ¶ 16. As such, defendant could *elect* to do business with whichever client Mr. Pernis brought to it – the only caveat being that in the event R+R derived revenue from such a client, Mr. Pernis would be paid a commission on those revenues. Id. at ¶ 14.

Therefore, the rationale set forth in *Zupan v. Blumberg* 2 N.Y.2d 547 (Court of Appeals, of New York 1957) and *H&H Poultry, Corp.* v. MBPXL Corp., 95 Misc. 2d 895, 408 N.Y.S. 2d 602 (Sup. Ct. N.Y. Co. 1978) does not apply. In those cases, the courts determined that because an employer could not arbitrarily refuse to accept orders from the procured customer, the agreement was barred as not capable of being performed within one year. *Id.* In the case at hand, however, an election on the part of defendant to not perform construction services for a client brought to R+R by Mr. Pernis was an understood prerogative under the Agreement, and actually occurred numerous times. Am. Compl. ¶ 16. This is due to the economic realities of the particular business, the various sizes of projects, and other factual considerations, but nonetheless, the Amended Complaint assets that the 2000 Agreement is sufficiently distinguishable from the contracts in the cited cases, and is not barred by the Statute of Frauds.

Furthermore, it is not altogether clear whether Mr. Pernis' falls under the § 5-701(1) of the General Obligation Law as defendant asserts, as the designation of the services provided by Mr. Pernis would have to be interpreted even prior to discovery as "negotiating the purchase, sale, exchange, . . . of a business opportunity." N.Y. Gen. Obligations Law § 5-701(a)(10).

Even assuming, *arguendo*, that the parties' agreement cannot be performed within one year, or that it falls into the category of a "brokerage" contract pursuant to New York General Obligations Law §5-701(10), the Year 2000 Agreement is evidenced by numerous signed and notarized writings, and has been acknowledged by defendant in this proceeding sufficiently to satisfy the writing requirement of the Statute. Where, as here, plaintiff has alleged the existence of written documentation in its complaint that would satisfy the Statute of Frauds, courts have denied motions to dismiss filed before the plaintiff has had sufficient opportunity for discovery. *Zucker v. Katz*, 708 F. Supp. 525, 531 (S.D.N.Y. 1989) (denying 12(b)(6) motion to dismiss, and finding

allegations sufficient to proceed to discovery where complaint stated that "[plaintiff's] interest was recognized in informal writings and otherwise."); *see also APS Food Sys. Inc., v. Ward Foods, Inc.*, 70 A.D.2d 483, 421 N.Y.S.2d, 225-226 (1st Dept. 1979) (denying a motion to dismiss and permitting discovery where there was evidence of a contract, and facts were necessary to determine the intent of the parties and sufficiency of the writings). Internal memoranda, checks, minutes of meetings, financial projections and other documents that have been held to satisfy the Statute of Frauds will likely be discovered during discovery, and will be utilized to resolve any ambiguity as to the acknowledged terms in Mr. Ratner's May 9, 2005 letter. *See Marcella v. ARP Films, Inc.*, 778 F.2d 112, 116 (2d Cir. 1985) ( "The question of future commissions is . . . a factual question of the terms of the admitted contract" for the jury, which may consider "letters, checks, and commission reports, as well as [defendant's] pleadings" in determining defendant's breach of an agreement to pay post-termination commissions to plaintiff.)

The *Marcella* case is particularly on point, as the facts are similar to the case at hand. There, the defendant conceded an oral agreement, but claimed that post-termination revenues were not due to plaintiff. When discovery was had, the Second Circuit affirmed the lower court's investigation and consideration of documents, sworn testimony, checks, industry custom and commission reports, as well as defendant's pleadings in determining that plaintiff was due commissions after the termination of the parties relationship. 778 F.2d 112, at 116-17.

In the case at hand, we too have a situation where the contract is admitted, documentary evidence clearly exists concerning the terms and interpretation of the Agreement. Discovery is necessary to prove Mr. Pernis' allegations, and so this motion should be denied as premature.

Finally, even assuming . . . that the writings are not sufficient, and that the agreement cannot be performed within one year, plaintiff "allege[s] sufficient mutual part performance by the parties

15

to make dismissal of the Complaint inappropriate." *Lamprecht v. Comte*, 1994 WL 260867 at *4 (S.D.N.Y. June 7, 1994) (denying motion to dismiss and stating that oral agreement will be recognized after analysis of several circumstances, including: "whether the parties change position in ways suggesting a binding agreement; whether the parties engage in a pattern of conduct consistent with the alleged agreement subsequent to the date the parties allegedly entered into it; whether the overt actions of of the parties [such as part performance] suggest the existing of a binding agreement; and whether the party being charged fails to explain these over actions."). Here, this analysis is particularly applicable to defendant's partial performance by payment of post-employment commissions to Mr. Pernis for almost a year before deciding they were not obligated to do so. They clearly believed they were so obligated, and should not be permitted to now alter the agreed-upon terms of the relationship.

### Unjust Enrichment and Quantum Meruit

"Where an express contract is unenforceable by reason of the Statute of Frauds, there may still be some recovery of the reasonable value of the services rendered." *Marcella, supra*, 778 F.2d at 117, (quotations omitted) ("Plaintiff may quite properly submit his case on both theories."). Furthermore, plaintiff has alleged the required elements of both causes of action. As regards Quantum meruit, paragraphs 59-63 of the Amended complaint allege sufficient claims. With respect to unjust enrichment, it is clear that plaintiff performed services to his detriment, with the expectation of being paid his commission; defendant has been enriched by that performance at plaintiff's expense. Am. Compl. ¶ 41-44. This is an allegation in equity rather than law, and the performance of plaintiff in reliance upon defendant's performance must be taken into account, and states a cause for unjust enrichment.

Defendant does not assert that the allegations are insufficient, rather that a party may not bring both. This is not an accurate reading of the law, as set forth above. Federal courts permit plaintiffs to sue on a contract and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim." *Knudsen v. Quebecor Printing (USA) Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992).

### Specific Performance

Defendant claims that monetary damages are sufficient to restore plaintiff to the situation he would have been in had defendant not breached the contract. Def.'s Mot. To Dismiss at 11. As the full measure of plaintiff's damages are as yet undetermined and may extend into the future, plaintiff is entitled to specific performance, particularly an order directing an accounting and payment of plaintiff's commissions due under the Year 2000 Agreement.

### Labor Law Claim

Federal Rule of Civil Procedure permits litigants to plead in the alternative. *Gerard Klauer Mattison & Co. v. Shared Technologies, Inc.*, 1997 WL 394585 at * 3 (S.D.N.Y. July 14, 1997). In this case plaintiff clearly alleges "in the *alternative* that in the event that Plaintiff is determined to be an employee, and not an independent contractor, Plaintiff was a commissioned salesman of Defendant" and that wages, i.e. commissions sought throughout this case were not timely paid it in violation of the New York Labor Law. Am. Compl. ¶ 55-57. This cause of action incorporates all the other allegations of the Amended Complaint. Defendant's claims in this regard is simply without merit.

### Conclusion

In light of the foregoing, Plaintiff respectfully requests that defendants motion to dismiss be denied in its entirety.

New York, New York

October 30, 2007

                                      Respectfully submitted

                                      _____/s/_____

                                      Zeynel Karcioglu (ZMK 7931)