UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

GUGLIELMO PERNIS,                         :     Civil Action No.:

                                  :     07 CV 5787

           Plaintiff,          :

                                  :     Judge Berman

          -against-           :

                                  :

RICHTER + RATNER CONTRACTING CORP.,   :

                                :

          Defendant.        :

                                :

----------------------------------------------------------------X

## DEFENDANT'S REPLY MEMORANDUM

HOGUET NEWMAN REGAL & KENNEY, LLP

10 East 40th Street
New York, New York 10016
(212) 689-8808

*Attorneys for Defendant*

Of Counsel:

Laura B. Hoguet
Randi Seltzer May

# TABLE OF CONTENTS

I.    The Statute of Frauds Bars Plaintiff's Action....................................................1

II.   Plaintiff Has Not Alleged the Existence of an
      Agreement To Pay Post- Employment Commissions.......................................5

CONCLUSION.................................................................................................10

i

# TABLE OF AUTHORITIES

## CASES

**PAGE**

Bendevena v. Richard Fuchs Real Estate, Inc., 89 Misc. 2d 466,
  391 N.Y.S.2d 939 (N.Y. Dist. Ct. 1976).................................................9

Bourne v. Walt Disney Co., 68 F.3d 621 (2d Cir. 1995).....................................8

Braten v. Bankers Trust Co., 60 N.Y.2d 155, 468 N.Y.S.2d 861 (1983) ...........................8

Doherty v. N.Y. Telegraph Co., 202 A.D.2d 627, 609 N.Y.S.2d 306
  (2d Dep't 1994), cited in Def. Mem. 7 ........................................................3

Eber-NDC, LLC v. Star Industries, Inc., 13 Misc.3d 1222(A) 831 N.Y.S.2d 347
  (Sup. Ct. N.Y. Co. 2006) ...........................................................2

E.G.L. Gem Laboratories Ltd v. Gem Quality Institute, Inc., 90 F. Supp. 2d 277
  (S.D.N.Y. 2000) ........................................................................8

Frishberg v. Esprit de Corp. Inc., 778 F. Supp. 793 (S.D.N.Y. 1991),
  969 F.2d 1042 (2d Cir. 1992)...........................................................9

Fuchsberg & Fuchsberg v. Commissioner, 13 A.D.3d 831, 786 N.Y.S.2d 257
  (3d Dep't 2004) .................................................................6

H&H Poultry Corp. of N.Y. v. MBPXL Corp., 95 Misc. 2d 895,
  408 N.Y.S.2d 602 (Sup. Ct. Bronx Co. 1978) .............................................2

Handel v. STA Travel (New York), Ltd., 216 A.D.2d 177, 629 N.Y.S.2d 12
  (1st Dep't 1995).........................................................................5

Lamprecht v. Comte, No. 93 Civ. 7928, 1994 WL. 260867 (S.D.N.Y. 1994) ...................2

Maloney v. Jarco Metal Products Corp., 144 N.Y.S.2d 128
  (Sup. Ct. Nassau Co. 1955)...........................................................9

Marcella v. ARP Films, Inc., 778 F.2d 112 (2d Cir. 1985) .................................4

McGimpsey v. J. Robert Folchetti & Associates, 19 A.D.3d 658, 798 N.Y.S.2d
  498 (2d Dep't 2005) ..............................................................6

Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Group
  PLC, 93 N.Y.2d 229, 689 N.Y.S.2d 674 (1999)...........................................2

**PAGE**

Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F. Supp. 2d 514
    (S.D.N.Y. 2001)................................................................................................1

Nemelka v. Questor Management Co., 40 A.D.3d 505, 836 N.Y.S.2d 598
    (1st Dep't 2007).............................................................................................2

Parisi v. Swift, 121 Misc. 2d 787, 468 N.Y.S.2d 841 (N.Y. Civ. Ct. 1983)........................9

Rasmussen v. Yellow River, Inc., 298 A.D.2d 322, 749 N.Y.S.2d 239
    (1st Dep't 2002)..............................................................................................9

Schroeder v. Sitelines, Inc., 29 N.Y.2d 229, 325 N.Y.S.2 (1971) ......................................6

U.S. v. Isaksson, 744 F.2d 574 (7th Cir. 1984).....................................................................6

Yudell v. Ann Israel & Associate, 248 A.D.2d 189, 669 N.Y.S.2d 580
    (1st Dep't 1998)..............................................................................................9

Zucker v. Katz, 708 F. Supp. 525 (S.D.N.Y.1989).............................................................3

Zupan v. Blumberg, 2 N.Y.2d 547 (1957) ..........................................................................2

Seeking to stave off dismissal of his complaint at the pleading stage, plaintiff argues at every turn that he needs discovery to explore the facts. Pl. Op. Mem. 6, 7, 12, 13, 14. "Facts in dispute," while a good argument for blocking a summary judgment motion, is not effective to block a Rule 12(b)(6) motion, such as this, which shows that plaintiff would not be entitled to relief even if he were able to prove every one of the facts alleged in the complaint. The complaint here has already been amended in an effort to cure its legal insufficiency, and since plaintiff's claim even as re-pleaded remains defective, defendant's motion for dismissal should be granted without leave further to replead. See Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F. Supp.2d 514, 544 (S.D.N.Y. 2001) (dismissing without leave to replead where plaintiff had already amended his complaint, and collecting cases).

I.    **The Statute of Frauds Bars Plaintiff's Action**

The Amended Complaint declares that this suit is brought to enforce the "parties' Agreement," Compl. ¶ 28, which plaintiff defines as an agreement, made in 2000, by which he agreed to introduce customers to defendant in return for a 1% commission payable for as long as the customers did business with the defendant. Compl. ¶¶ 8, 13. The 2000 "Agreement," however, is not alleged to have been in writing, and it is therefore unenforceable under two sections of the Statute of Frauds: Section 5-701(a)(10), which applies to agreements to provide business introductions,[1] and Section

---

[1]  Plaintiff all but concedes that Section 5-101(a)(10) applies to the alleged "Agreement," but adds, confusingly, that designation of the services he was to perform "would have to be interpreted even prior to discovery." Pl. Op. Mem. 14. The proper inquiry on this motion to dismiss is whether the agreement as alleged in the Amended Complaint is one of the class of agreements described in Section 5-701(a)(10), which it clearly is, as the

5-701(a)(1), which applies to contracts not to be performed within one year.[2]

Defendant's alleged partial performance does not take the 2000 alleged "Agreement" out

of the Statute of Frauds because New York's Court of Appeals has made clear, in a case

certified to it by the Second Circuit, that there is no judicially-created partial performance

exception to Section 5-701. Messner Vetere Berger McNamee Schmetterer Euro RSCG

Inc. v. Aegis Group PLC, 93 N.Y.2d 229, 234, 689 N.Y.S.2d 674, 677, n. 1 (1999).

Lamprecht v. Comte, No. 93 Civ. 7928, 1994 WL 260867 at 4 (S.D.N.Y. 1994), cited at

Pl. Op. Mem. 15-16, therefore does not avail plaintiff, since the court's denial of a motion

to dismiss there in order to enable consideration of part performance issues is

incompatible with the direction subsequently given by the Court of Appeals in Messner.

See also Nemelka v. Questor Management Co., 40 A.D.3d 505, 506, 836 N.Y.S.2d 598,

599 (1st Dep't 2007)("The exception to the statute of frauds for part performance does not

apply to General Obligations Law § 5-701(a)(10)"); Eber-NDC, LLC v. Star Industries,

Inc., 13 Misc.3d 1222(A), 831 N.Y.S.2d 347 (Sup. Ct. N.Y. Co. 2006) (no part

performance exception to Section 7-701(a) (1)).

---

Amended Complaint is replete with allegations that plaintiff introduced customers to defendant in exchange for commissions. Compl. ¶¶ 8, 10, 11, 14, 18, 19.

[2]    The "Agreement" is barred by the one year rule of Section 5-701(a)(1) because, on plaintiff's construction of its terms, defendant would be obligated to pay commissions on future business with the customers he introduced whenever that business was done---the customers might want to do business five years, or ten years, or 20 years in the future, and if so, according to plaintiff, his contract with defendant would still be breached if defendant did the business and did not pay plaintiff a commission. Zupan v. Blumberg, 2 N.Y.2d 547 (1957) (reversing lower courts and dismissing claim under an oral service contract for commissions sought on any account plaintiff brought in for so long as the account was active because it was of indefinite duration and by its terms not performable within one year); H&H Poultry Corp. of N.Y. v. MBPXL Corp., 95 Misc.2d 895, 408 N.Y.S.2d 602 (Sup. Ct. Bronx Co. 1978). In an effort to distinguish these cases, plaintiff argues that defendant might avoid a breach by refusing to enter into future agreements with customers that plaintiff had originally introduced to it. Pl. Op. Mem. 14. The Court of Appeals, however, considered and rejected this argument in Zupan, 2 N.Y.2d at 552.

Defendant's principal brief on this motion shows that, as a matter of law, the parties' 2004 written agreement, which "confirms" the terms of plaintiff's compensation going forward from that date, supersedes the parties' alleged 2000 oral agreement, and the latter is therefore not admissible to vary the written agreement's terms. <u>See</u> <u>Doherty</u> <u>v. N.Y. Tel. Co.</u>, 202 A.D.2d 627, 609 N.Y.S.2d 306 (2d Dep't 1994), cited in Def. Mem. 7. Plaintiff argues instead for application of the rule that the Statute of Frauds' writing requirement can be "satisfied by several incomplete writings if the agreement can be pieced together out of these separate writings." <u>Zucker v. Katz</u>, 708 F. Supp. 525, 531 (S.D.N.Y.1989), cited at Pl. Op. Mem. 14. Thus, plaintiff wants to "piece together" with his alleged 2000 oral agreement, the parties' 2004 written agreement, Compl. Ex. A, which confirmed the terms of plaintiff's compensation at the time he became an employee of the defendant, and a 2005 writing, Compl. Ex. B, that confirmed his entitlement to commission for introducing defendant to Bulgari, one of the customers named in the 2004 agreement. Unfortunately for plaintiff, these writings do not contain the "perpetual commissions" term whose existence he is trying to prove. Indeed, plaintiff is not seeking to piece writings together to make out the terms of an alleged agreement--- rather, he is trying to use later writings to bootstrap into admissibility a term of an alleged prior oral agreement that the writings conspicuously omit to contain.

At bottom, finally, the "piecing together" argument by which plaintiff seeks to avoid the Statute of Frauds is inconsistent with the factual allegations of the Amended Complaint, which claims, in ¶ 18, that the 2000 oral "Agreement" was separate and distinct from the employment agreement set forth in the 2004 written contract, and that the 2000 oral "Agreement" continued, after the 2004 agreement was entered into, to be

the definitive statement of the parties' agreement on the subject of commissions. If this were so---if the 2004 written agreement operated separate from and independent of the 2000 oral "Agreement" as plaintiff contends---then plaintiff cannot logically piece the 2004 writing together with the 2000 oral "Agreement" to take the latter agreement of the Statute of Frauds. In other words, if there were two separate contracts between the parties, one oral and one in writing, then the existence of the written one neither helps to prove the terms of the oral one, nor saves it from the bar of the Statute of Frauds.

Nor, finally, does Marcella v. ARP Films, Inc., 778 F.2d 112 (2d Cir. 1985), cited at Pl. Op. Mem. 15, avail plaintiff here. The plaintiff in that case was an exclusive representative who sold license agreements for film series in exchange for commissions that were payable in installments over the life of the licenses, typically 24 to 36 months. At trial the parties' oral agreement to pay the employee's commissions was established from commission reports over a period of years as well as from testimony of both sides and evidence as to industry practice; the jury also found that the parties had agreed to complete payment of commissions after the sales representative's employment ended (the dispute being whether post-employment commissions were or were not to be reduced from 15% to 5%). Since a contract to pay post-employment commissions had been proved by the evidence, the Second Circuit found in Marcella that the Statue of Frauds was a "non-issue." 778 F.2d at 116-17. In this case, by contrast, plaintiff has pleaded an agreement entitling him to post-termination commissions, and since the Amended Complaint does not allege the existence of any writing that reflects such a promise, the Statute of Frauds requires that it be dismissed.

## II.    Plaintiff Has Not Alleged the Existence of an
## Agreement To Pay Post- Employment Commissions

The Amended Complaint alleges that, under the agreement the parties entered into in 2000, plaintiff introduced defendant to customers in exchange for a 1% commission. Compl ¶¶ 8-17.  Plaintiff then alleges that, in 2004, the parties agreed that plaintiff would become an employee of the defendant; that his "capacity as an employee" would not affect the 2000 agreement, and that he would continue as "an independent contractor" to receive his 1% commissions.  Compl ¶¶ 17, 18.  If plaintiff were correct that the 2000 agreement was to continue into the future independently of the parties' employment relationship, then, as set forth in Section I of this brief, the Statute of Frauds would clearly bar enforcement of that agreement because it was not in writing.  In any event, since plaintiff beginning in 2004 undisputedly was defendant's employee, he cannot recover post-employment commissions because the parties' written agreement does not, by its terms, so provide.

The reason that plaintiff expends much effort seeking to show that, after he became an employee of the defendant, he was also an "independent contractor" under the alleged 2000 "Agreement" is that he wants to rely on a handful of cases, such as Handel v. STA Travel (New York), Ltd., 216 A.D.2d 177, 629 N.Y.S.2d 12 (1st Dep't 1995), which award commissions to a plaintiff after his relationship with the defendant ended where the record demonstrated that the plaintiff had worked as an independent contractor rather than as an employee.  Pl. Op. Mem. 9.  Reading of these cases reveals, however, that they turn, not on the plaintiff's status as an independent contractor versus that of employee, but rather on whether the parties' agreement provided for commissions to be paid after their relationship ended.  In Handel, plaintiff was entitled to post-termination

commissions "up to the specified contractual limitation" Id. at 12, because he was an independent contractor whose contract provided for such commissions. Similarly in Schroeder v. Sitelines, Inc., 29 N.Y.2d 229, 325 N.Y.S.2 940 (1971), plaintiff was paid commissions in accordance with the terms of the contract, not simply because he was an independent contractor.[3]  Contrary to plaintiff's argument, the case law does not fashion one rule for contractors and one for employees; rather the touchstone in all cases is whether the parties had an agreement that commissions would be paid when their relationship ended.[4]  In this case, the written agreements that were operative at the time plaintiff's relationship with defendant ended did not evidence any such agreement, and if there was (or could have been) an agreement between the parties separate from what was expressed in their writings, that separate agreement is barred by the Statute of Frauds.

---

[3]  In re Hudson Feather & Down Prods., Inc., cited by plaintiff at Pl. Op. Mem. 10, was a bankruptcy case in which the court found, as a conclusion of law, that a claimant had failed to establish entitlement to commissions based on its reading of the parties' agreement.  In McGimpsey v. J. Robert Folchetti & Assocs., 19 A.D.3d 658, 798 N.Y.S.2d 498 (2d Dep't 2005), the appellate court upheld the grant of summary judgment dismissing a claim for post-termination commissions because "the subject agreement did not expressly provide for such compensation."  A question of fact, however, existed as to whether plaintiff had been paid what were characterized as "pre termination commissions" under the parties' agreement, which evidently provided for payment of commissions on contracts he finalized before his termination.  Id. at 658, 500.

[4]  Nor does plaintiff succeed in showing that, as a matter of law, he could have been an employee of the defendant and simultaneously an independent contractor.  Fuchsberg & Fuchsberg v. Comm'r, 13 A.D.3d 831, 786 N.Y.S.2d 257 (3d Dep't 2004), cited on this point in Pl. Op. Mem. 10, n. 2, says that a law firm should have withheld tax from referral fees paid to associates because the fees were "wages" for tax purposes.  On this reasoning plaintiff's commissions were "wages" from which tax should have been withheld and which should have been reported on a W-2 instead of a 1099.  Presumably plaintiff cited Fuchsberg because that case says in dicta, citing U.S. v. Isaksson, 744 F.2d 574 (7th Cir. 1984), that an employee can also be an independent contractor.  Isaksson, however, does not so hold.  Rather, the court in that case, affirming an employer's conviction for tax fraud in understating the wages of his company's workers, noted, without deciding, that one worker may have been, for tax purposes, both an independent contractor and an employee.

6

Nor, contrary to plaintiff's contention, does the parties 2004 written agreement by its terms preserve plaintiff's alleged "independent contractor" status. Rather, in this document, the parties "confirm...that the compensation agreement for Mr. Pernis is composed" of a base salary and employment benefits, to compensate him for his marketing services, and "[a]dditionally, a commission agreement, entered into between Michael Ratner and Guglielmo Pernis in the Year 2000 whereby all the work done by Guglielmo Pernis exclusively on behalf of Richter & Ratner is to be compensated by a straight commission percentage....." The terms of the commission agreement are then detailed, including a list of the customers for whose introductions defendant will pay commissions. Compl. Ex. A. These words do not say that plaintiff will be an independent contractor at the same time he is an employee. And, the written agreement "confirms" or covers the subject matter of the compensation that plaintiff will receive for all the services he provides to defendant going forward, thus superseding the prior agreement as a matter of law as set forth in Def. Mem. 7-9. Plaintiff cannot add a term to a written agreement simply by alleging that the parties agreed to it four years previously, even though their written agreement does not reflect it.

Plaintiff also points to a 2005 written agreement between the parties, Compl. Ex. B, which confirms that plaintiff has introduced a particular customer, Bulgari, to defendant, and says that "any business we conduct with Bulgari will be compensated to you with 1% of the gross contract value(s) *as set forth in your general commission agreement with Richter & Ratner*" (emphasis added). Compl. Ex. B. The "general commission agreement" referred to in the document is, manifestly, the 2004 written agreement which identifies Bulgari as one of 24 potentially commissionable customers.

In short, neither the 2004 agreement which reduced to writing the parties' agreement regarding plaintiff's "compensation," nor the 2005 writing which confirmed the payment of commissions for the introduction of Bulgari, reflects any agreement between the parties that commissions are to continue after their relationship ends.[5]

Plaintiff cites two federal cases[6] which in turn cite an older New York authority, Braten v. Bankers Trust Co., 60 N.Y.2d 155, 162, 468 N.Y.S.2d 861, 864 (1983), for the proposition that a court must determine whether writings are integrated by "reading them in light of the surrounding circumstances, and by determining whether or not the agreement was one which the parties would ordinarily be expected to embody in the writing." Id. at 864, 468 N.Y.S.2d at 864. Here, the circumstances are that plaintiff, who had worked under an oral commission agreement, was becoming an employee of the defendant and the parties were setting forth in writing their agreement as to his compensation. These circumstances compel the conclusion that the written agreement was meant to express the parties' entire agreement, not just a part of it.

Arguing that he is indeed entitled to perpetual commissions because he "fully performed" his agreement by making introductions prior to his termination, plaintiff relies on two lines of cases in which courts have permitted employees to recover commissions for work done before the end of their employment. Pl. Op. Mem. 9. One

---

[5] Plaintiff argues that, by specifying that plaintiff's commission was to be calculated on gross billings "inclusive of change orders," the parties agreed to post-termination commissions, Pl. Op. Mem. 9, but the calculation of billings, which is what these words address, has nothing to do with whether commissions are to be paid after the relationship between plaintiff and defendant ends.

[6] Pl. Op. Mem. at 13 cites on this point Bourne v. Walt Disney Co., 68 F.3d 621, 627 (2d Cir. 1995) and E.G.L. Gem Lab Ltd v. Gem Quality Institute, Inc., 90 F. Supp.2d 277 (S.D.N.Y. 2000).

8

such line of cases permits a licensed real estate broker to share in the commission paid to his employer that he earned by procuring a sale prior to the termination of his employment: <u>Parisi v. Swift</u>, 121 Misc. 2d 787, 468 N.Y.S.2d 841 (N.Y. Civ. Ct. 1983); <u>Bendevena v. Richard Fuchs Real Estate, Inc.</u>, 89 Misc.2d 466, 391 N.Y.S.2d 939 (N.Y. Dist. Ct. 1976). The second line of cases awards commission to a sales representative for orders taken prior to his termination even if payment for the goods or services came later. <u>Rasmussen v. Yellow River, Inc.</u>, 298 A.D.2d 322, 749 N.Y.S.2d 239 (1st Dep't 2002); <u>Maloney v. Jarco Metal Prods. Corp.</u>, 144 N.Y.S.2d 128 (Sup. Ct. Nassau Co. 1955), cited at Pl. Op. Mem. 10.

Both these lines of cases are different on their facts from this case because, in those cases, the plaintiff's performance was complete—the sale made, the order procured—before employment terminated, and the payment for that sale, while it took place after the employee's termination, was tied to the discrete sale that plaintiff had procured or the order he had taken previously. Here, by contrast, plaintiff claims that he is entitled to commissions, not only for contracts on jobs that came in from "his" customers while he worked for the defendant, but also on jobs that came in, or may come in, long afterwards, when he was no longer working for the defendant and which he did nothing to help bring about. Such "perpetual commissions," as the courts have long recognized, will not be awarded without an express written agreement. <u>See Frishberg v. Esprit de Corp. Inc.</u>, 778 F. Supp. 793, 803 (S.D.N.Y. 1991), <u>aff'd</u>, 969 F.2d 1042 (2d Cir. 1992) and cases cited in defendant's principal brief on this motion, Def. Mem. 7.

The Appellate Division, First Department expressly recognized this distinction in <u>Yudell v. Ann Israel & Assoc.</u>, 248 A.D.2d 189, 669 N.Y.S.2d 580 (1st Dep't 1998),

where it held that a legal recruiter could seek commissions from her former employer on two placements made before her employment ended. In reaching this result, the court distinguished the facts of the legal recruiter's case from the facts in the many cases in which commissions are denied to at-will salesmen on post-termination sales because they "involve a plaintiff's indefinite and unlimited claim to commissions from all future transactions between its former employer and certain customers, simply because plaintiff was the one who originally serviced those customers." Id. at 190, 669 N.Y.S.2d at 581. Here, plaintiff seeks exactly what the Appellate Division in Yudell said a terminated sales representative cannot recover, namely, the "right to prospective commissions for the indefinite future simply because she allegedly originated defendant's relationship with those clients." Id. at 190-91, 669 N.Y.S.2d at 581.

## CONCLUSION

The Amended Complaint should be dismissed in its entirety, with prejudice and without leave to replead.

Dated: New York, New York
       November 6, 2007

Respectfully submitted,

HOGUET NEWMAN REGAL & KENNEY, LLP

By: _____
       Laura B. Hoguet (LH-7465)
       Randi Seltzer May (RS-7115)

10 East 40th Street
New York, New York 10016
(212) 689-8808

*Attorneys for Defendant*